EXHIBIT "B"

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK - PART 31**

---------------------------------------------------------------------X

TREVOR DAVIS,

                      **Plaintiff,**

    **-against-**

DIANE C. DAVIS,

                      **Defendant.**

---------------------------------------------------------------------X

**Index No. 309415/08**

**Motion Sequences**
**002, 003 & 005**

**DECISION AND ORDER**

**Laura E. Drager, J:**

In this action for a divorce, the applications made under *motion sequence*

*numbers 002, 003 and 005 concern related requests for pendente lite* relief and,

therefore, are consolidated for decision.

The application designated motion sequence number 002 is brought by the

Defendant (the "Wife") and seeks the following relief[1]:

(1) *unallocated non-taxable temporary maintenance and child support payable*

by the Plaintiff (the "Husband") in the combined sum of $30,000 per month with a lump

sum award of retroactive arrears; and

(2) *a direction that the Husband pay the carrying charges for the marital*

apartment including mortgage, real estate taxes, homeowner's insurance, monthly

---

[1] The Wife also sought sole custody of the parties children under the age of 18; and exclusive occupancy of the marital apartment located in Manhattan; and alternate weekend access to the residence in Pawling, New York. The parties entered into a stipulation on October 14, 2009, "so-ordered" by this court on the same date, that resolved the issues of *pendente lite* occupancy and access to the marital residence and the country residence and an interim access schedule for the parents and children.

maintenance charges, utilities, housekeepers, the nanny's salary, the dog care giver's fees, all telephone service, internet expenses, cable television, house alarm charges, necessary repairs and maintenance; and

(3) a direction that the Husband pay 100% of the cost of medical insurance for the Wife and children and 100% of their unreimbursed or uncovered medical, dental, therapeutic counseling, optical and pharmaceutical expenses; and

(4) a direction that the Husband pay 100% of the children's private school and college costs including tuition, fees, dues and charges billed by the academic institution, books and course materials, transportation, meal plans, student activity fees, student athletic fees, tutoring courses for the parties' son and 100% of summer camp or summer programs, organized extra-curricular activities and religious school tuition, fees and course materials; and

(5) appointment of a neutral real estate appraiser to appraise the Manhattan apartment and two farm properties located in Pawling, New York and all other real estate properties owned by the Husband in his own name or in corporate name with the cost of all such appraisals to be paid by the Husband; and

(6) an award of interim expert fees to the Wife's forensic accountant in the sum of $135,000 for an evaluation of the Husband's business enterprises and of the marital lifestyle, with leave to seek additional fees as necessary; and

(7) the appointment of a neutral appraiser to value the parties' jewelry, art, antiques and collections including hunting trophies and guns; and

(8) a direction that the Husband pay all expenses associated with the properties in Pawling, New York including, but not limited to, mortgages, maintenance, real property taxes, utilities, insurance, repairs, upkeep, animal and dog care givers fees, and housekeepers fees; and

(9) A direction that the Husband maintain all existing policies of insurance on his life.

The Husband opposes the portions of the Wife's application that seek monetary relief beyond direct payment by him of the mortgage and maintenance for the Manhattan apartment, the expenses for the Pawling farm, the children's educational expenses (including tuition, books and extracurricular expenses), and all medical insurance premiums and unreimbursed medical expenses (See, the Husband's affidavit dated February 5, 2009, submitted with motion sequence 002).

The application designated motion sequence number 003 is brought by the Husband and seeks permission to place the marital apartment in Manhattan on the market for sale to be sold for no less than twelve million ($12,000,000) dollars[2]; and to consolidate a certain Family Court proceeding brought by the Wife against the Husband with the present divorce action. [3]

---

[2] The Husband also requested temporary sole custody of the minor children. That issue was resolved by the October 14, 2009 stipulation.

[3] At oral argument of the application, on April 7, 2009, the court indicated that the request for consolidation would be granted upon submission of a transcript of the record which would then be "so-ordered" to accomplish the consolidation. No steps were taken by either party to effectuate that direction. In the meantime, the Family Court order of protection expired on May 22, 2009 and the parties continued to cohabit in the Manhattan apartment, with the children,

The application designated motion sequence number 005 is brought by the Wife

and seeks: (1) an order restraining the Husband and his insurers from depositing,

cashing or utilizing any insurance reimbursement proceeds relating to fire damage that

occurred in early March 2009 at the farm owned by the parties in Pawling, New York,

and directing that any insurance proceeds from that fire be held in escrow by counsel;

and (2) an accounting by the Husband of all fire insurance proceeds received by him

and of all financial documents purportedly destroyed in that fire; and (3) production by

the Husband of all documents regarding the farm in Pawling including, without

limitation, all policies of insurance and insurance claims to be submitted and all

mortgage information and records of mortgage payments; and (4) production, in court,

of the Wife's jewelry.

In the order to show cause dated March 10, 2009 (motion sequence number

005), the court issued temporary restraining orders granting all of the injunctive relief

sought by the Wife pending resolution of the application or further order of the court.

**BACKGROUND**

The parties were married on March 17, 1988. This action for a divorce was

commenced on September 5, 2008. The parties have four children: a son born in

December of 1988; a son born in March of 1992; a daughter born in June of 1993 and a

daughter born in April of 1997. The Wife is 50 years old and the Husband is 53. Both

of the parties and all of their children enjoy good health.

---

without further incident. Under these circumstances, the request for consolidation is moot and no
further action is required of this court with regard to the Family Court proceeding.

The parties' primary residence is a 6-bedroom luxury apartment in Manhattan that the Husband asserts is worth $12 million. Both of the parties and the children have continued to live together in that apartment since the commencement of this action. Title to the Manhattan apartment is held in the name of a corporate entity controlled solely by the Husband. In addition, the parties own two adjacent farm properties in Pawling, New York. Part of the Pawling property is a working farm on which the Husband breeds cattle and over 100 horses are boarded. The parties use the Pawling property as a country residence. In March 2009 a fire substantially destroyed the main residence on the Pawling property. The farm property also includes a colonial farmhouse and several cottages. Title to the real estate in Pawling is held in the name of several corporate entities all controlled by the Husband.

The Husband is a real estate developer of luxury apartment buildings in Manhattan that are owned by corporate entities controlled by the Husband. He also is engaged in a resort real estate venture in Anguilla, where the parties have an interest in a vacation home. On his sworn statement of net worth he reports income of $7,500 per week from his real estate development business and interest income of $70,000 per month. He does not indicate whether that income is gross or net after taxes.[4] The Husband has not submitted a copy of his most recent income tax return, although it is

_____

[4] The Wife appends a copy of the Husband's 2006 federal income tax return to her moving papers as part of Exhibit F. That tax return shows income of $4,722,433, from various sources, and business losses of $17,098,088 for a net loss of $13,219,134 in 2006. Nevertheless, the parties have been spending at least $100,000 per month on family living expenses and private educational costs, according to their submissions.

required to be attached to the net worth statement.[5] From the limited information provided by the Husband, it appears that he has income of at least $102,500 per month.

On the Wife's sworn statement of net worth, she lists her occupation as "mother/fundraiser." She reports no income and submits no income tax return. Prior to June 1993, the Wife worked in advertising. The Wife admits that she sold an item of jewelry when the Husband ceased giving her spending money (See, Wife's Affidavit of February 13, 2009 at paragraph 22). The Husband asserts without contradiction that the Wife received $120,000 for that jewelry. The Husband further asserts, also without contradiction in the Wife's reply papers, that the Wife transferred approximately $674,000 from an investment account in his name to an account solely under her control.

## INTERIM SUPPORT

When awarding temporary maintenance, the court must consider and balance the factors enumerated in Domestic Relations Law §236B (6), such as the financial status of the respective parties, their age, health, necessities and obligations, the nature and duration of the marriage, the present and future capacity of each of the parties to be self-supporting, the tax consequences to the parties and the income which

---

[5] Neither party submits an income tax return for 2007 or 2008.to their net worth statements although the court rules require a copy of the most recent tax return. See, 22 NYCRR §202.16(b). It is also noted that the Wife failed to append a copy of the retainer agreement with her attorneys to her sworn statement of net worth although the court rules require that the retainer agreement be attached to the net worth statement. See, 22 NYCRR §202.16(c)(1).

the parties are capable of earning by honest efforts. *See Baker v. Baker*, 120 A.D.2d

374 (1st Dept. 1986); *see also, Lowe v. Lowe,* 211 A.D.2d 595 (1st Dept. 1995); *Lasry

v. Lasry,* 180 A.D.2d 488 (1st Dept. 1992). *See Bagner v. Bagner,* 207 A.D.2d 367

(2nd Dept. 1994); *see also, Kesten v. Kesten,* 234 A.D.2d 427 (2nd Dept. 1996).

The court also is required to consider the standard of living established during

the marriage. DRL §236(B)(6)(a). However, the marital standard of living is just one of

the factors to be considered by the court. *Naimollah v. De Ugarte*, 18 A.D.3d 268 (1st

Dep't 2005).

In fashioning an award of interim support that includes child support, the court

has considered the guidelines contained in the Child Support Standards Act (Domestic

Relations Law §240 [1-b][c]) as well as the factors which permit a deviation from the

standard calculation, as delineated in DRL §240(1-b)(f), such as the financial resources

of the custodial and non-custodial parent and those of the children, the physical and

emotional health of the children, their educational or vocational needs and aptitudes, as

well as the non-monetary contributions that the parents will make toward the care and

well-being of the children. *See, Formato v. Formato,* 173 A.D.2d 274 (1st Dept. 1991).

In this case, the parties are roughly the same age. They each enjoy good health.

The parties were married for over 20 years. The marital lifestyle was quite luxurious.

The family resides in a spacious luxury apartment on the Upper East Side of

Manhattan. The parties' three younger children attend private schools and their oldest

son attends a private college in upstate New York.

Pursuant to a stipulation dated October 14, 2009, the parties have agreed *pendente lite* to a nesting arrangement such that the children will remain in the marital apartment with each parent occupying that apartment with the children during alternate weeks. Each parent will reside in another apartment during the weeks they do not reside with the children. The Husband has agreed to pay the costs for this second apartment.

The Husband's monthly expenses (as set forth in his sworn statement of net worth) total more than $85,000 not including private school and college expenses of the children. The Husband indicates that the family housing costs amount to $52,636 per month and utilities amount to $800 per month, not including internet, cable television, telephone or cellular telephone service.

According to the Wife's sworn statement of net worth, the Husband pays $17,754 per month for private school and college expenses of the children and $22,000 per month for vacation and summer camp expenses. The Wife lists monthly expenses totaling $19,900 for herself and the children, comprised of: $5,000 for food and bottled water; $1,200 for clothing; $500 for unreimbursed medical expenses; $100 for household maintenance; $8,000 for domestic help (a babysitter and housekeepers); $350 for car expenses; $400 for school supplies; $2,300 for recreational expenses including $1,300 for a personal trainer; and $2,050 for miscellaneous expenses. The Wife asserts that this budget represents a substantial diminution in the standard of living enjoyed by the children and herself prior to the divorce.

The Husband admits that, prior to the initiation of divorce proceedings, he provided $20,000 per month to the Wife for family expenses over and above housing costs, utilities, educational expenses and other costs paid for directly by him (See, Husband's Affidavit dated February 5, 2009 at page 12). He agrees to pay the mortgage and maintenance for the Manhattan apartment and the costs of the farm in Pawling, New York as well as all of the children's school expenses plus medical insurance and non-reimbursable medical expenses (id. at page 13). However, he claims that he cannot afford the amount of unallocated direct support requested by the Wife due to the currently depressed state of the real estate market. The Husband objects to the costs for household help requested by the Wife. He argues that a nanny is not necessary for their teenage children (the youngest child was born in April of 1997 and is now twelve years old). According to the Wife's net worth statement, the cost of the nanny is $2,400 per month.

While the Husband asserts that he lacks sufficient income to pay the level of support sought by the Wife, he does not append any tax returns to his papers and does not explain how he will finance the costs he volunteers to cover, such as the expenses of the farm in Pawling. The Husband claims that the farm in Pawling is operating at a loss but offers no evidence to support that claim. The Wife was excluded from the farm from sometime prior to January 2009 until the October 14, 2009 Stipulation allowed her to have alternate weekend access to that property. As discussed infra, the primary residence used by the family at the Pawling farm was severely damaged by a fire in

March 2009 and is uninhabitable at present. At a settlement conference on October
14, 2009, the court was informed that the parties have access to other residential
buildings on the property.

Under all of these circumstances, the Husband is directed to continue payment,
*pendente lite,* of the following monthly carrying charges for the Manhattan apartment:
mortgage and maintenance charges; utilities comprised of gas, electricity, telephone,
cellphone, internet and cable TV; the premiums for all currently existing insurance
policies, including family medical coverage, homeowner's insurance and car insurance;
and the cost of the garage space in Manhattan for the automobile used by the Wife.
The Husband also is directed to pay all of the expenses of the farm properties in
Pawling, New York, including the wages of any domestic staff, *pendente lite.* In
addition, provided the Husband obtains an apartment for the parties to use to
accomplish the nesting plan, the Wife is awarded the sum of $17,000 per month as
unallocated taxfree support, payable on the first day of each month, retroactive to the
date of this application. If the Husband does not obtain the Second Apartment within
60 days from the date of this order, the award of unallocated taxfree support to the Wife
shall be increased to $21,000 per month, retroactive to the date of this application.

The Wife shall be responsible for the wages of the nanny and the dog walker in
Manhattan. The Husband shall be responsible for the wages of the housekeeper for
the Manhattan apartment. The Husband shall also pay any veterinary expenses.

The Husband shall pay all private school and college expenses of the children including tuition, room and board as appropriate, fees, books, student athletic fees, and travel to and from college, and all organized extra-curricular activities of the children such as music, art, sports, lessons and religious school tuition, fees and books, *pendente lite*. The Husband shall pay any summer camp or summer program tuition and fees for the children, when due, *pendente lite*.

The Husband shall maintain and pay the costs of medical insurance coverage for the Wife and children and all unreimbursed or uncovered medical, dental, therapeutic counseling, optical and prescription pharmaceutical expenses of the parties' children and of the Wife, exclusive of cosmetic procedures for the Wife.

Any arrears shall be paid at the rate of $5,000 per month until paid in full.

These provisions for the support of the family should enable the Wife and children to enjoy a lifestyle commensurate with the apparent available income pursuant to the net worth statements and roughly comparable to the marital standard of living described in the papers submitted by each of the parties. In reaching this decision, the court has considered that the Wife will now be responsible for the salaries of the nanny and the dogwalker, thereby reducing the Husband's expenses. However, the court also has considered that the Husband will have to fund a second Manhattan apartment. Moreover, he will be alone with the children 50% of the time and will, therefore, bear half of the children's day-to-day expenses.

**NEUTRAL APPRAISERS' FEES**

DRL §237(d) authorizes the court to award and apportion litigation expenses including appraisal fees and accountant fees "that the court may determine to be necessary to enable a spouse to carry on or defend" a divorce action. By order dated March 17, 2009, the court appointed a neutral forensic appraiser to appraise various business entities controlled by the Husband or in which the Husband owns an interest. The neutral business appraiser has asked the parties to obtain valuations of the real estate owned by the business entities. The Husband consents to the retention of neutral appraisers to appraise the value of the real estate.

Under these circumstances, it is necessary and appropriate for the court to appoint neutral appraisers to value the marital real estate owned by the parties or by any of the business entities controlled or owned, in whole or in part, by the Husband. If the parties cannot agree on the identity of an appraiser for any of the properties within 30 days from the date of this order, then they shall submit the names, contact information and resumes of three appraisers each, for a combined total of six proposed appraisers for each parcel or category of real estate, in a joint letter to the court without revealing which party has suggested a particular appraiser, no later than 40 days from the date of this order. The court will randomly select one of the appraisers it finds qualified to perform the work.' The Husband shall be responsible for 100% of this cost subject to reallocation at trial, if appropriate.

The Wife also requests the appointment of a neutral appraiser to value marital jewelry, art, antiques and collections (including wild game trophies and guns). The

Husband does not object to appraisal of the jewelry, art and antiques but claims that

some portion of the wild game trophy collection belongs to the children and are not

marital assets. All of those assets must be appraised for purposes of equitable

distribution. Title to specific items can be resolved at trial, if necessary, but the

valuations must be performed so that discovery can be completed. If the parties cannot

agree on the identity of an appraiser or appraisers for those assets within 30 days from

the date of this order, then they shall submit the names, contact information and

resumes of three appraisers each for a combined total of six proposed appraisers for

each category of asset, in a joint letter to the court without revealing which party has

suggested a particular appraiser, no later than 40 days from the date of this order. .

The court will randomly select one of the appraisers it finds qualified to perform the

work.    The Husband shall pay 100% of the cost of the neutral appraisals subject to

reallocation, if appropriate, at trial.

**THE WIFE'S FORENSIC ACCOUNTANT'S FEES**

        The Wife seeks an award of expert accountant fees to value the Husband's

interests in his various real estate ventures. Initially, the Wife sought an award of .

$135,000 as accountant fees to retain Stephen A. Linker of M & K Rosenfarb LLC to

value the Husband's businesses and to establish the monetary cost of the marital

lifestyle. After retaining new counsel, the Wife amended her request to seek

accountant's fees in an unspecified sum so that she can retain Jay Fishman of

Financial Research Associates to value the Husband's businesses (See, Affidavit of Jay

*E. Fishman dated November 2, 2009).*

A neutral forensic accounting expert has been appointed to evaluate the

Husband's business interests (by order dated March 17, 2009), but a report has not

been submitted yet by that expert. Therefore the Wife's request for fees to obtain an

independent evaluation of the Husband's business holdings is premature and must be

denied. The Wife may apply for accountant's fees to rebut information in the neutral

forensic accountant's report concerning the value of the Husband's business interests,

if she so chooses, after that report has been issued.

The Wife indicates that she wishes to conduct a lifestyle analysis. The court

awards to the Wife $18,000 to be paid by the Husband to the Wife's forensic

accountant for the accountant to conduct a lifestyle analysis. This award is subject to

reallocation at trial, if appropriate.

## SALE OF THE MARITAL APARTMENT

In motion sequence number 003, the Husband seeks a direction that the marital

apartment in Manhattan be placed on the market immediately and sold as soon as

practicable. That request is denied. While the Husband claims that he cannot afford to

pay the mortgage for the apartment, he does not submit sufficient evidence regarding

his income to support that contention. In the absence of credible evidence of the

Husband's current income and the sources of funds for the lavish lifestyle he continues

to lead, the court cannot assess the merits of his claim of relative poverty.

Moreover, the Manhattan apartment is the primary residence of the parties'

children who have been subjected to enough turmoil by this highly contentious divorce

litigation. The best interests of the children will not be promoted by the additional stress

of moving to a new residence or residences. Furthermore, the parties have now

entered into a "nesting agreement" whereby the children will remain in the marital

apartment and the parents will alternate residence there with them.

## INJUNCTIVE RELIEF CONCERNING THE FIRE AT THE PAWLING PROPERTY

The Wife seeks restraints upon the disposition of fire insurance proceeds

relating to a fire at the Farm in Pawling, New York on about March 7, 2009. That fire

substantially destroyed the main residence, a farmhouse-style mansion, at the farm. A

temporary restraining order, enjoining the disposition of the fire insurance proceeds was

granted in the Order to Show Cause dated March 30, 2009, initiating motion sequence

number 005. The Wife asserts that a 2006 insurance estimate indicated that the

replacement value of the damaged house was thirteen ($13,000,000) million dollars.

The Husband argues that the restraints sought by the Wife will interfere with and

violate a provision in at least one of the mortgages covering the damaged house to the

effect that, "at the option of the mortgagee (mortgage lender), the principal amount of

the mortgage may be reduced by the insurance proceeds." (*See,* Husband's Answering

Affidavit dated April 2, 2009, at pages 1-2, and Exhibit C thereto). According to the

Husband, no insurance proceeds will be paid to him and, therefore, the restraints are

not necessary. No copy of or excerpts from the insurance policy currently in effect[6] is

---

[6] The Husband appends a coverage summary of an insurance policy with a policy period
of 1/17/08 to 1/17/09 to his Answering Affidavit dated April 2, 2009, as Exhibit B. Nothing in

submitted to support the Husband's claim that the insurance proceeds cannot be distributed to him or his agents. Moreover, there is no evidence regarding whether the mortgagee has elected or intends to elect the option of applying the insurance proceeds to payment of the principal amount of the mortgage.

Under the circumstances presented to the court in motion sequence number 005, it is appropriate to continue the temporary restraints set forth in the March 30, 2009 Order to Show Cause until such time as the insurer is prepared to make a distribution and the mortgagee has elected one of the options available to it under the mortgage concerning the disposition of insurance proceeds.

Accordingly, it is hereby

**ORDERED** that the Plaintiff shall pay the monthly carrying charges for the Manhattan apartment occupied by the parties and the children; and all expenses of the farm in Pawling, New York; and all of the utilities for those residences (comprised of gas, electricity, telephone, cell-phone, internet, water and cable TV); and the cost of the garage space in Manhattan for the automobile used by the Wife; and any veterinary expenses; and it is further

**ORDERED** that the Plaintiff shall continue to pay the premiums for all currently existing insurance policies, including family medical and dental coverage for the parties' children and the Defendant, life insurance, homeowner's insurance and car insurance; and it is further

_____

that document indicates that insurance proceeds cannot be distributed to the Husband or his agents.

**ORDERED** that the Plaintiff shall pay 100% of the unreimbursed or uncovered medical, dental, therapeutic counseling, optical and prescription pharmaceutical expenses of the children and of the Defendant, exclusive of cosmetic procedures for the Defendant; and it is further

**ORDERED** that the Plaintiff shall pay all private school and college expenses of the parties' children including tuition, room and board as appropriate, fees, books, student athletic fees, and travel to and from college, and all organized extra-curricular activities of the children such as music, art, sports, lessons and religious school tuition, fees and books, *pendente lite*. The Husband shall pay any summer camp or summer program tuition and fees for the children, when due, *pendente lite*; and it is further

**ORDERED** that the Plaintiff shall pay the sum of $17,000 per month to the Defendant as unallocated, taxfree direct spousal maintenance and child support, *pendente lite*, payable on the first day of each month. This award of *pendente lite* direct child support and maintenance is retroactive to the date of the Defendant's application with the retroactive payments to be paid at the rate of $5,000 per month until paid in full. Plaintiff shall be entitled to a credit for all payments for which he has cancelled checks or other evidence of payment. The first payment shall be due on December 1, 2009 and monthly thereafter on the first day of the month. The Plaintiff shall obtain and pay the costs of a second apartment in Manhattan for the use of the parties while they are not in residence with the children in the martial apartment. If the Plaintiff does not obtain the second Manhattan apartment within 60 days from the date

of this order, then the award of combined monthly taxfree support to the Defendant

shall be increased to $21,000 per month, retroactive to the date of the Defendant's

application; and it is further

**ORDERED** that the Plaintiff shall pay the wages of the housekeeper employed to

maintain the marital apartment in Manhattan and the Defendant shall pay the wages of

the dog walkers employed at the Manhattan apartment and the children's nanny; and it

is further

**ORDERED** that each of the various real estate properties owned by the parties

or by businesses controlled or owned in whole or in part by the Plaintiff shall be

appraised by a neutral appraiser. The cost of the appraisals shall be paid by the

Plaintiff subject to reallocation at trial, if appropriate. If the parties cannot agree on the

identity of an appraiser for any of the real estate properties within 30 days from the date

of this order, then each party shall submit the names, contact information and resumes  -

of three appraisers, for a total of six proposed appraisers, in a joint letter to the court

without revealing which party has suggested a particular appraiser, no later than 40

days from the date of this order . The court will randomly select one of the appraisers it

finds qualified to perform the work; and it is further

**ORDERED** that the value of the jewelry, art, antiques, gun collection and hunting

trophy collection in the possession of either party shall be appraised by an appropriately

qualified neutral appraiser or appraisers. If the parties cannot agree on the identity of

appraisers for that personalty within 30 days from the date of this order, then each party

shall submit the names, contact information and resumes of three appraisers, for a total

of six proposed appraisers, for each category of asset, in a joint letter to the court

without revealing which party has suggested a particular appraiser, no later than 40

days from the date of this order. The court will randomly select one of the appraisers it

finds qualified to perform the work; and it is further

**ORDERED** that Plaintiff, his insurers and the insurers of the properties known as

COGI Farm, COGI LLC, Quaker Hill LLC, Red Rose Farm, Top Gallant, Quaker Hill X

LLC, and Quaker Hill XX LLC, all associated with the properties located at 15 Kirby Hill

Road, Pawling, NY ("GOGI Farm"), their employees servants and assigns including but

not limited to the Chubb Group, are hereby enjoined and restrained from depositing,

cashing and/or utilizing the proceeds from any insurance reimbursement relating to fire

damage at the COGI Farm on or about March 7, 2009, until further order of the court;

and it is further

**ORDERED** that the Plaintiff is directed to provide Defendant's attorneys with a

copy of all claims filed and correspondence exchanged with and other documentation

exchanged among Plaintiff, his agents, servants, employees and assigns, and

insurance, police, fire and other investigatory entities relating to the COGI farm

property; and it is further

**ORDERED** that the proceeds of any insurance checks relating to the fire

damage or property claims at the COGI Farm property shall be deposited in an escrow

account bearing the joint names of the counsel for the parties to this action and

requiring the joint signatures of counsel for any withdrawal, until further order of the court; and it is further

**ORDERED** that Plaintiff is directed to account to the Defendant for any and all monies received from insurance claims regarding the March 7, 2009 fire at the COGI Farm property, and any financial documents destroyed in that fire; and it is further

**ORDERED** that Plaintiff is directed to provide to Defendant copies of all policies of insurance and all mortgage information and records of mortgage payments made in connection with the COGI Farm property; and it is further

**ORDERED** that the Plaintiff shall pay the sum of $18,000 to the Defendant's forensic accountant, subject to reallocation at trial, if appropriate, within 30 days from the date of this order; and it is further

**ORDERED** that any relief not specifically granted is denied.

This constitutes the decision and order of the Court.

Dated: December 9, 2009

_____
Laura E. Drager, J.S.C.

